UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRUCE COTTER,

                Plaintiff,

-against-

MILLY LLC,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

09 Civ. 04639 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Bruce Cotter filed a verified complaint against Defendant Milly LLC, his former employer, in the Supreme Court of the State of New York, County of New York, on February 12, 2009. (Rosen Decl. Ex. A) The complaint alleges that Defendant breached Cotter's employment contract, violated New York Labor Law, and was unjustly enriched, and seeks damages of approximately $38,000 plus costs, interest and attorneys' fees. (Pltf. Br. at 2)

        On May 15, 2009, Milly removed the action to this Court on the basis of federal question jurisdiction, alleging that Cotter's claims relate to or concern claims for benefits under employee benefit plans subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). (Docket No. 1) On May 21, 2009, Cotter filed a motion to remand this action to state court, arguing that Milly's notice of removal was untimely. (Docket No. 4) On June 22, 2009, Milly filed a motion to dismiss, alleging that Cotter's state law claims are either completely preempted by ERISA or fail to state a claim on which relief may be granted under Rule 12(b)(6). (Docket No. 12) For the

1

reasons stated below, Cotter's motion to remand is GRANTED and Milly's motion to dismiss is DENIED as moot.

## DISCUSSION

Federal courts have jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law where "'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 689-90 (2006) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 27-28 (1983)).

Under the well-pleaded complaint rule, a plaintiff is "free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998). Plaintiffs are limited only by the artful pleading doctrine – "an independent corollary of the well-pleaded complaint rule" – which prevents a plaintiff from defeating federal jurisdiction by "omitting to plead necessary federal questions in a complaint." Franchise Tax Bd. of Cal., 463 U.S. at 22. Federal jurisdiction may not be premised on the assertion of a federal defense, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is [essential to adjudication of the claims]." Id. at 14. One well recognized exception to the well-pleaded complaint rule, however, allows state claims to be removed "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003); see also Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). "ERISA is one of these statutes." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004).

2

In assessing whether a plaintiff's state law claim "necessarily depends on resolution of a substantial question of federal law," Empire Healthchoice Assurance, Inc., 547 U.S. at 689-90 (internal quotation omitted), the Supreme Court has held that courts must determine whether the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

The party seeking to preserve removal has the burden of proving that federal jurisdiction exists. See Pan Atl. Group v. Republic Ins. Co., 878 F. Supp. 630, 638 (S.D.N.Y. 1995). The Second Circuit has held that courts must "'construe the removal statute narrowly, resolving any doubts against removability.'" Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994) (quoting Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045-46 (2d Cir. 1991)).

Cotter alleges a series of state law claims related to his termination of employment, including breach of contract, violations of state labor law, and unjust enrichment. (Rosen Decl. Ex. A) Milly argues that Cotter's claims seeking "'wages' pursuant to Milly's profit sharing plan and 401(k) plan" present a federal question because they arise under "ERISA's expansive preemptive scope," and therefore federal jurisdiction is proper under 28 U.S.C. § 1331. (Notice of Removal ¶ 4) Because the issue of proper removal involves this Court's subject matter jurisdiction, it must be decided prior to Milly's motion to dismiss under Rule 12(b)(6). See, e.g., Rhulen Agency, Inc. v. Alabama Ins. Gaur. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) ("Where . . . the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds,

the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot. . . ."); Chiropractic Neurodiagnostic, P.C. v. Allstate Ins. Co., 08 Civ. 2319 (SJF)(AKI), 2009 WL 210866, *2 (E.D.N.Y. Jan 26, 2009). Because this action must be remanded, Milly's motion to dismiss will be denied as moot.

I.     **BACKGROUND**

Cotter and Milly entered into an employment agreement on May 4, 2007 ("Employment Agreement"), which states that Cotter will begin his position as corporate comptroller at Milly on May 21, 2007. (Moscow Decl. Ex. A) The Employment Agreement provides that upon accepting this offer of employment, Cotter will be eligible to receive: (1) "Salary: Annual gross starting salary of $150,000"; (2) "Management Performance Incentive Plan: Ten percent of your annual gross salary"; and, (3) "Profit Sharing: Ten percent of your annual gross salary will be contributed to a 401(k) account." (Id.) The Agreement further specifies that Cotter will be "eligible to participate in the 401(k) savings plan effective [his] first day of work. Employee contributions, up to 4% of base salary are matched by the Company at dollar for dollar. Company matching contributions are vested at 100% immediately." (Id.) Cotter assumed the position of corporate comptroller and worked for Milly until he was terminated on April 25, 2008. At the time of Cotter's dismissal, the parties had discussed but had not reached agreement concerning a separation package. (Def. Opp. at 2; Orshrin Decl. ¶ 5 E & Ex. A)

Cotter filed an action for breach of the Employment Agreement and other state law claims in state court. In his complaint, Cotter asserts that upon his termination Milly "willfully failed to pay Plaintiff the balance of $5,980 in incentive compensation wages that were due and owing to Plaintiff based on ten percent of Plaintiff's prorated

$150,000 salary, less payments made" (Cmplt. ¶ 6); "willfully failed to pay Plaintiff $13,980 in profit sharing wages that were due and owing to Plaintiff based on ten percent of Plaintiff's prorated $150,000 salary" (Id. ¶ 7); "willfully failed to pay Plaintiff $5,592 in 401(k) matching wages pursuant to the 401(k) payment agreement contained in the Employment Agreement" (Id. ¶ 8); "further withheld $5,792.23 in accrued vacation wages from Plaintiff, representing two weeks of [unused] accrued vacation time" (Id. ¶9); "failed to reimburse Plaintiff in the sum of $1,507.94, representing unreimbursed taxicab fares that Plaintiff incurred" when working late (Id. ¶10); and "failed to reimburse Plaintiff in the sum of approximately $1,500, representing reasonable expenses incurred by Plaintiff while Plaintiff was attending an industry conference." (Id. ¶ 11)

On February 23, 2009, Cotter served Milly by delivering two copies of the summons and complaint to the New York State Secretary of State, the statutory agent for service of process, pursuant to Limited Liability Company Law § 303.[1] (Rosen Decl. ¶4)

---

[1] Section 303 governs service of process on limited liability companies and states:
> (a) Service of process on the secretary of state as agent of a domestic limited liability company or authorized foreign limited liability company shall be made by personally delivering to and leaving with the secretary of state or his or her deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee, which fee shall be a taxable disbursement. Service of process on such limited liability company shall be complete when the secretary of state is so served. The secretary of state shall promptly send one of such copies by certified mail, return receipt requested, to such limited liability company at the post office address on file in the department of state specified for that purpose.
>
> (b) Nothing in this section shall limit or affect the right to serve any process required or permitted by law to be served upon a limited liability company in any other manner now or hereafter permitted by law or applicable rules of procedure.

5

The Secretary of State mailed the summons and complaint to Milly on February 26, 2009, at its official address of record. (Id. ¶7) The address on file with the Secretary of State at that time was: Milly LLC, 512 Seventh Avenue, 24th Floor, New York, New York 10018. (Id. ¶6) When Milly was incorporated in 2000, its offices were located at this address. (Oshrin Decl. ¶2) Shortly thereafter, however, Milly moved to 252 West 38th Street, and then to its present location at 265 West 37th Street. Throughout Cotter's employment at Milly, it was located at its present address. (Id.) This is also the address publicly available on Milly's website. (Id. ¶4)

Milly's CEO Andrew Oshrin claims that he was not aware that the address on file with the Secretary of State was outdated and states that "[o]ver the past few years I have signed or reviewed several corporate documents that have been filed with the State of New York, and they have been filed with the correct address."[2] As a result of the incorrect address on file with the Secretary of State, "no one at Milly was aware of this lawsuit until April 21st of [2009]," when Plaintiff's counsel called Milly and subsequently faxed Milly a copy of the summons and complaint. (Id. ¶6) It is undisputed that Milly did not receive actual notice of this lawsuit until April 21, 2009. (Pltf. Reply Br.) On May 15, 2009, Milly removed this action to this Court. (Docket No. 1)

## II. DEFENDANT'S NOTICE OF REMOVAL WAS UNTIMELY

Under 28 U.S.C. § 1446(b), a "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through

---

[2] Oshrin recalls seeing the wrong address on certain draft documents from corporate counsel but corrected these errors before these documents were filed. (Oshrin Decl. ¶3)

6

service or otherwise, of a copy of the initial pleading. . . ." Milly contends that it complied with the 30-day limit set forth in the removal statute, while Cotter argues that this action must be remanded pursuant to 28 U.S.C. § 1447(c) because Milly failed to timely remove. (Pltf. Br. at 1-2) The parties disagree as to timeliness because they have selected different dates for when the 30-day clock was triggered. Cotter argues that Milly's 30-day period began when the Secretary of State was served on February 23, 2009, or at the latest when the Secretary of State mailed the summons and complaint to Milly on February 26, 2009. (Ptlf. Br. at 3, 7) Milly argues that the 30-day period began to run on April 21, 2009, when it received actual notice of Cotter's action. (Def. Opp at 4) For the reasons set forth below, this Court concludes that Milly's notice of removal was untimely.

Cotter argues that because service of process on the Secretary of State as a statutory agent for a limited liability corporate defendant is deemed valid and complete service under New York law, Milly was required to remove within 30 days of Cotter's February 23, 2009 service on the Secretary of State – i.e., by March 25, 2009. (Pltf. Br. 3 (citing Limited Liability Company Law § 303)).

A determination about the timeliness of a removal petition, however, presents a question of federal and not state law. Grello v. J.C. Penny Corp., 03 Civ. 8245 (CSH), 2003 WL 22772397, *1 (S.D.N.Y. Nov. 21, 2003) ("The boundaries of the removal jurisdiction of the federal courts are determined by federal laws, not state laws and procedures.") Because the 30-day deadline Cotter relies on is a federal standard, the fact that a state's service requirements were met is not dispositive. What may be proper and complete "service of process" under state law has no bearing on whether a defendant

7

has received such notice that the 30-day clock set forth in 28 U.S.C. 1446(b) has been triggered. Id. ("That the New York Business Corporation Law recognizes service of process as being complete in civil actions brought against a corporation authorized to do business in the state once the Secretary of State has been served is not relevant to [the] question of whether defendant's notice of removal is timely.") (quoting Medina v. Wal-Mart Stores, 945 F. Supp. 519, 520 (W.D.N.Y. 1996)).

Although New York law may treat service as "complete" when a summons and complaint are served on the Secretary of State, federal courts in this district typically require actual receipt of the initial pleadings by a defendant to start the 30-day removal clock. As the court in Cygielman v. Cunard Line Ltd., 890 F. Supp. 305, 307 (S.D.N.Y. 1995) held in collecting cases on this subject, "[t]he heavy weight of authority is to the effect that the time for removal, in cases in which service is made on a statutory agent, runs from receipt of the pleading by the defendant rather than the statutory agent." "When service of process is made upon a statutory agent rather than on the defendant personally, the thirty-day period during which the defendant may remove the case does not begin with service upon the agent, but rather, when the defendant receives personal service of the summons and complaint," Fernandez v. Hale Trailer Brake & Wheel, 332 F. Supp. 2d 621, 624 (S.D.N.Y. 2004), or "from the date on which the defendant receives the notice that such service has been made." Calderon v. Pathmark Stores, Inc., 101 F. Supp. 2d 246, 247 (S.D.N.Y. 2000). See also Boone v. Thane, 07 Civ. 4358 (SLT)(VVP), 2009 WL 910556 (E.D.N.Y. March 31, 2009); Hua Zao Yang v. ELRAC, Inc., 03 Civ. 9224 (CSH), 2004 WL 235208, at *1 (S.D.N.Y. Feb. 3, 2004) ("[T]he thirty-day deadline for filing a Notice of Removal tolls thirty days from the receipt of the initial

pleadings by the defendants themselves, rather than the date on which the Secretary of State has been served."); Grello, 2003 WL 22772397, at *1 ("The critical moment under 28 U.S.C. § 1446(b) is when a defendant <u>receives</u> the initial pleadings. Service of process may, as the language of the statute, quoted above, points out, be synchronous with receipt. . . . it also may not.") (emphasis in original). The logic behind this rule is that the "defendant's right to a federal forum ought not to depend upon the rapidity and accuracy with which statutory agents inform their principals of the commencement of litigation against them." Cygielman, 890 F. Supp. at 307. The rule is also "consistent with the plain language of § 1446," Fernandez, 332 F. Supp. 2d at 624, which states that a notice of removal must be filed within 30 days of "<u>receipt</u> by the defendant." 28 U.S.C. § 1446(b) (emphasis added).

Cotter argues, however, that Milly violated its obligation under Limited Liability Company Law § 211(d)(6) to keep the Secretary of State advised of its current address, and should not be permitted to exploit a delay in notice caused only by its own negligence. (Pltf. Br. at 4-5) While few cases address the issue of how a defendant's negligent failure to keep its contact information up to date in public filings affects the 30-day period for filing a notice of removal, Judge Sand indicated in <u>Rowland v. Giftcertificates.com, Inc.</u>, 195 F. Supp. 2d 509 (S.D.N.Y. 2002), albeit in <u>dicta</u>, that equitable estoppel would be appropriate in such a situation.

In <u>Rowland</u>, defendant did not receive notice of a complaint served on the Secretary of State because – through no fault of the defendant – the post office failed to forward mail pursuant to a forwarding order. 195 F. Supp.2d at 513. The court held that

given that the defendant was without fault, it "should not be held responsible for a third party's failure to effect service." In dicta, however, Judge Sand stated:

> we agree with the proposition that if Defendant's failure to meet a statutory obligation prevented Defendant from receiving service of process through the Secretary of State's November 11, 2001 mailing, then Defendant may be estopped from arguing that its notice of removal was timely.

195 F. Supp.2d at 513. Judge Sand also stated that such a "rule would create an appropriate incentive for parties to maintain accurate service of process addresses with the Secretary of State." Id. at 514. Other courts considering the timeliness of a removal petition have emphasized the importance of defendants meeting their statutory registration obligations. See, e.g., Sostre v. Century Products, Inc., No. 98 Civ. 5845 (JSR), 1998 WL 765173 (Nov. 3, 1998 S.D.N.Y.) (holding that because "Plaintiffs . . . failed to show that [defendant was] in violation of an obligation to seek authorization from [and register with] the Secretary of State," notice was not complete until defendant received actual notice in the mail).

Judge Sand's reasoning is persuasive and fair. The "actual notice" requirement is intended to protect defendants from errors committed by, or delay attributable to, the Secretary of State's office or some other third party, not to insulate defendants from the consequences of their own negligence. See Giftcertificates.com, Inc., 195 F. Supp 2d at 512 ("defendant's right to a federal forum ought not to depend upon the rapidity and accuracy with which statutory agents inform their principals of the commencement of litigation against them. . . . If service of process is lost in the mail or is returned to the sender as a result of the Postal Service's error, the intended recipient is not and should not be held responsible for the legal consequences. . . .") (citations and

10

quotation marks omitted). The cases cited above – establishing that the 30-day period begins to run upon a defendant's actual receipt of notice – do not address the circumstances here, where a delay in notice is caused solely by a defendant's failure to provide accurate contact information to a statutory agent, in violation of state law. The statutory agent committed no error and caused no delay here, and there is no suggestion that the post office erred in delivering the summons and complaint to the address Milly had provided to the Secretary of State's office. In short, Milly would have received notice of Cotter's suit on or about February 23, 2009, but for its own negligence in not updating its address with the Secretary of State.

Milly has not cited any law to this Court suggesting that such negligence can or should be excused in the context of a removal petition. Indeed, the Second Circuit has upheld much harsher consequences than a remand to state court when an entity has not kept its corporate filings up to date. In <u>Martin-Trigona v. Belford</u>, 763 F.2d 503 (2d Cir. 1985), for example, the Court upheld a default judgment where the defendants were served at an outdated address registered with the Connecticut Secretary of State. The Circuit found that this failure "to change the address for service of process with the Secretary of State constitutes a willful disregard of legal process and a willful default." <u>Id.</u> at 506. There is no reason why a more lenient standard should apply in the removal context, where the consequences are much less severe. Accordingly, this Court holds that because the late notice to Milly was caused by its own failure to maintain an accurate address at the Secretary of State's office, it is equitably estopped from contending that its removal was timely.

### III. DEFENDANT HAS NOT DEMONSTRATED A BASIS FOR THE EXERCISE OF FEDERAL JURISDICTION

In addition to arguing that Milly's removal petition was untimely, Cotter contends that Milly has offered no basis for the exercise of federal jurisdiction. Cotter asserts that he has brought no cause of action under ERISA, that none of his claims are preempted by ERISA, and that given the absence of diversity this case must be remanded to state court. (Pltf. Reply at 5) The Court agrees that Cotter's state law claims are not preempted by ERISA, and that accordingly there is no basis for federal jurisdiction.

ERISA's preemptive scope is "expansive" as a result of Congress' intent to make regulation of employee benefit plans "exclusively a federal concern." Aetna Health, Inc., 542 U.S. at 208 (internal quotation omitted). State causes of action are preempted under ERISA "if [they] relate[] to an employee benefit plan within the meaning of section 514(a), 29 U.S.C. § 1144(a), and fall[] within the scope of the statute's civil enforcement provisions, found in section 502(a), 29 U.S.C. § 1132(a)." Smith v. Dunham-Bush, Inc., 959 F.2d 6, 8 (2d Cir. 1992); see also Aetna Health, Inc., 542 U.S. at 209 ("any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . is . . . pre-empted") "A plan, fund, or program under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Grimo v. Blue Cross/Blue Shield of Vermont, 34 F.3d 148, 151 (2d Cir. 1994) (citing cases). Similarly, "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983).

But state law is "not preempted by ERISA if it 'affect[s] employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law "relates to" a plan.'" Romney v. Lin, 94 F.3d 74, 79 (2d Cir. 1996) (quoting Shaw, 463 U.S. at 100 n. 21). ERISA preemption is not triggered unless the state law at issue has "some 'relationship' to ERISA plans or 'affects ERISA plans in some manner.'" Id. (quoting NYS Health Maint. Org. Conference v. Curiale, 64 F.3d 794, 799-800 & n. 15 (2d Cir. 1995)). When an "individual is entitled to such [benefits] only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope' of ERISA § 502(a)(a)(b)." Aetna Health, Inc., 542 U.S. at 210. "In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted. . . ." Id.

Milly argues that Cotter's breach of contract claim seeks compensation "allegedly owed to him for a profit sharing payment made by Milly pursuant to the 401(k) Plan, and for a matching contribution made by Milly into his 401(k) account." (Def. MTD Br. at 4)[3] Milly contends that because "[t]he 401(k) Plan is an employee pension benefit plan under ERISA . . . plaintiff's claims for any benefits under the Plan [are] preempted by ERISA." (Id.) Cotter's breach of contract claims, however, do not seek to recover benefits under a specified employee benefit plan, and therefore do not

---

[3] Defendant's arguments concerning the preemptive scope of ERISA are laid out in its motion to dismiss papers.

"duplicate[], supplement[] or supplant[]" ERISA's enforcement mechanisms. Aetna Health, Inc., 542 U.S. at 209. Cotter's claims concern representations made in the Employment Agreement, not his entitlement to benefits as specified in an employee benefits plan.[4] As Cotter argues, the current action "does not challenge an act or omission of a plan administrator nor does it rest on an interpretation of the scope of Cotter's benefits under Milly's Plan. Rather, the contract claim is based on the compensation Milly guaranteed to Cotter as inducement for him to accept its offer of employment, regardless of the Plan's existing terms." (Pltf. MTD Opp. at 6)

Cotter seeks to enforce precisely the type of independent legal duty contemplated by the Supreme Court in Aetna and further delineated by the courts in this Circuit. See, e.g., Cantor v. American Banknote Corp., 06 Civ. 1392 (PAC), 2007 WL 3084966, *6 (S.D.N.Y. Oct. 22, 2007) (holding that the "[Plaintiff's] entitlement to the benefits [did] not" result from the existence of employee benefit plans "but rather from the 2001 [Employment] Agreement. That the method selected for providing those

---

[4] The cases relied on by Milly involve claims directly relating to the administration or execution of benefit plans, and granting relief in those cases required an interpretation of the terms of benefit plans. (Def. MTD Reply at 5-7) See, e.g., Smith v. Dunham-Bush, Inc., 959 F.2d 6, 10 (2d Cir. 1992) (Plaintiff was an "ERISA plan participant," made "explicit reference to the pension plan in his complaint, and "the oral representation underlying th[e] suit deal[t] expressly and exclusively with the appellant's benefits" as provided by the employee benefit plan); Pronti v. CNA Fin. Corp., 353 F. Supp. 2d 320, 323 (N.D.N.Y. 2005) (Plaintiff alleged that his employer breached "agreement with him to provide certain benefit accrual credit under the CNA Plan" (emphasis added)); Flanagan v. IDI Constr. Co., 392 F. Supp. 2d 485 (E.D.N.Y. 2005) (Plaintiff brought action under ERISA to enforce contributions to an ERISA-governed fund specified in a collective bargaining agreement); Bizo v. Excellus Health Plan, Inc., No. 2 Civ. 6233 (CJS), 2005 WL 351057, *5 (W.D.N.Y. Feb. 8, 2005) (Plaintiffs were ERISA plan participants seeking to recover benefits under an ERISA-governed employee benefit plan, which was "directly linked to plaintiffs' state-law claims, since, in order to calculate their alleged damages, it would be necessary to re-calculate their benefits under the plan by treating their years of service at Rochester Medical as benefit service.")

14

benefits was modification of an existing ERISA plan does not alter the independent nature of the obligation."); DaPonte v. Manfredi Motors Inc., 335 F. Supp. 2d 352, 359 (E.D.N.Y. 2004) ("Plaintiffs here do not claim that Defendants failed to pay benefits to which [the employee] was entitled pursuant to a plan. Rather, Plaintiffs have sued Defendants for personal injury damages alleged to have arisen from [the employee's] reliance on misrepresentations Defendants made concerning medical benefits before [the employee] commenced reemployment.") In Wharton v. Duke Realty, LLP, 467 F. Supp. 2d 381, 390 (S.D.N.Y. 2006), for example, the plaintiff sued for breach of an employment agreement providing that plaintiff would work for defendant for five years and that plaintiff's "benefits (medical insurance, pension benefit, and any other benefits) [would] remain in effect and be guaranteed with [this] employment." Id. at 387. The court held that "even under a 'flexible analysis,' the Employment Agreement does not refer to any actual plan with enough specificity to deem that plan incorporated by reference. [It] simply provides that, as part of her compensation, plaintiff will receive certain benefits. These benefits may be provided pursuant to one or more ERISA plans . . . but that does not transform the Employment Agreement into an ERISA plan." Id. at 389 (internal citations omitted). Accordingly, the court found that plaintiff's breach of contract claim was not preempted by ERISA.

Similarly, in DaPonte, a former employee alleged common law claims for negligent and fraudulent misrepresentation regarding his medical benefits based on promises made by his employer prior to his re-employment. Citing several cases involving similar common law claims found not preempted by ERISA, the DaPonte court explained that "the gravamen of Plaintiffs' claim is that A. DaPonte would not have

15

agreed to reemployment with Defendants had they disclosed to him that he would not be eligible for [particular] benefits." Id. at 360. The Court held that plaintiffs' state common law claims were not preempted because the misrepresentations at issue were made "in the context of a pre-employment interview and . . . concerned the terms of his employment rather than the administration of health benefits" and "[a]ny relation between the state law claim and Defendants' health benefits plan [was] 'too tenuous, remote, [and] peripheral' to warrant ERISA preemption." Id. at 361.

Here, Cotter received an offer of employment laying out the terms of his employment and compensation. Just as the court found in Wharton, Cotter's employment agreement "lacks any of the hallmarks of an administrative program" and "does not refer to any actual plan with enough specificity to deem that plan incorporated." Wharton, 467 F. Supp. 2d at 389. While Cotter claims that Milly breached the terms of his employment agreement, he does not challenge the denial of benefits under a benefit plan. Cantor, 2007 WL 3084966, at *6 ("Plaintiff's contract claim does not challenge an action or omission by the Hartford Plan administrator. Nor does it rest on representations concerning the scope of Plaintiff's benefits under the existing Hartford Plan, but rather concerns future consideration guaranteed regardless of the plan's existing terms.") Where a "[p]laintiff's claim requires no interpretation of [an employee benefit plan] or ERISA itself," it is not preempted. Id.

Cotter's employment agreement states that he will be eligible for participation in a 401(k) savings plan and that Milly will make matching contributions into a 401(k) account. (Moscow Decl. Ex. A) These representations do not incorporate or depend on the interpretation or administration of an outside benefit plan to have

meaning or induce reliance. Milly presumably knows how to incorporate by reference the terms of an employee benefit plan in an employment contract and chose not do so here. Any connection is "too tenuous, remote or peripheral . . . to warrant a finding" that Plaintiff's claims "relate[] to a plan." Shaw, 463 U.S. at 100 n.12 (internal quotation omitted).[5]

Because Plaintiff's state law claims "(1) [do] not seek to recover benefits under a welfare plan, (2) [are] 'premised upon [Milly's] misrepresentation that was made outside the routine course of [plan] administration and could as easily have concerned economic benefits unrelated to ERISA as it did covered benefits,' and (3) pose[] no 'genuine threat of interference with the administration of primary plan functions,'" they are not preempted. DaPonte, 335 F. Supp. 2d at 360 (quoting Sandler v. New York News Inc., 721 F. Supp. 506, 514-15 (S.D.N.Y. 1989)). A determination of Cotter's state law rights under the Employment Agreement will not affect the direct administration of benefits under any of Milly's employee benefit plans, nor will such a determination arise

---

[5] Cotter notes that the damages he "seeks to recover are not dependent on the Plan's terms for measurement, as in fact, the Plan's terms substantially differ from those contained in the Employment Agreement," and therefore are not preempted by ERISA. (Pltf. MTD Br. at 8) Under the Plan, Cotter would not have been eligible as a participant until January 1, 2008, when he would have completed one year of service or six consecutive full calendar months of employment. Similarly, Milly's obligations to match Cotter's 401(k) contributions are discretionary under the Plan's language but are mandatory in Cotter's employment agreement. (Moscow Aff. Ex. A) Because Cotter does not claim any eligibility for benefits under an ERISA plan and relies on the language of his employment agreement, the question of Milly's obligation under that contract is one for the state court upon remand. See Wigell v. Nappi, 485 F. Supp. 2d 142,145 (N.D.N.Y. 2007) ("Where 'significant differences' exist between a company's existing severance plan and the promised benefits, it is appropriate to find that 'the promised benefits were free-standing and were not premised in any way on the existing plan.'" (internal quotation omitted))

out of or relate to "the execution, implementation, or administration" of an employee benefit plan in a way that would "compromise Congress' purpose in enacting ERISA" or "impede federal control" over related regulation. Id. (citing Geller v. County Line Auto Sales, 86 F.3d 18, 23(2d. Cir. 1996)). Accordingly, this Court lacks subject matter jurisdiction over Cotter's claims, and his motion to remand to state court will be granted on this ground as well.

### IV.     PLAINTIFF IS NOT ENTITLED TO ATTORNEYS' FEES

Cotter requests costs and actual expenses, including attorneys' fees, incurred as a result of Milly's improper removal. (Pltf. Br. at 1) The decision to grant attorneys' fees "requires application of a test of overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." Morgan Guar. Trust Co. v. Republic of Palau, 971 F.2d 917, 924 (2d Cir. 1992) (internal quotation omitted). As courts in this Circuit have acknowledged "when declining to grant costs in . . . case[s] involving artful pleading, 'this area of the law is extremely complicated and the related jurisdictional issues are difficult to navigate.'" Fin . and Trading, Ltd. v. Rhodia S.A., 04 Civ. 6083 (MBM), 2004 WL 2754862, at *8 (S.D.N.Y. Nov. 29, 2004) (quoting Foschi v. United States Swimming, Inc., 916 F. Supp. 232, 242 (E.D.N.Y. 1996)). Here, Milly had a colorable basis for removal under the doctrine of ERISA preemption, and also had a colorable argument that its removal was timely. Accordingly, Cotter's request for attorneys' fees will be denied.

## CONCLUSION

For the reasons stated above, Cotter's motion to remand this action to state court (Docket No. 4) is GRANTED, but his request for an attorneys' fee award is DENIED. The Clerk of the Court is directed to close this case and return the matter to the Clerk of the Supreme Court for the State of New York, New York County. Milly's motion to dismiss and any other pending motion is DENIED as moot.

Dated: New York, New York
       January 22, 2010

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge